1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT E. COLEMAN,

11              Plaintiff,                    No. 2:12-cv-00985 KJN P

12        vs.

13   SUSAN HUBBARD et al.,                    <u>ORDER</u> and

14              Defendants.                   <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16              Plaintiff is a state prisoner at California State Prison-Sacramento ("CSP-SAC"),

17   proceeding without counsel, with a civil rights action filed pursuant to 42 U.S.C. § 1983.

18   Plaintiff requests leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915, and moves for

19   a preliminary injunction.  This proceeding was referred to this court pursuant to 28 U.S.C.

20   § 636(b)(1), and Local Rule 302.  For the reasons that follow, the undersigned finds that plaintiff

21   failed to exhaust his administrative remedies on each of his claims, and therefore recommends

22   dismissal of this action in its entirety.

23   I.  <u>In Forma Pauperis Application</u>

24              Plaintiff has submitted a declaration that makes the showing required by 28

25   U.S.C. § 1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.

26   ////

1    Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28

2   U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee

3   in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will

4   direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account

5   and forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly

6   payments of twenty percent of the preceding month's income credited to plaintiff's prison trust

7   account.  These payments will be forwarded by the appropriate agency to the Clerk of the Court

8   each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28

9   U.S.C. § 1915(b)(2).

10  II.  Screening of Complaint

11      A.  Legal Standards

12    The court is required to screen complaints brought by prisoners seeking relief

13  against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

14  § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised

15  claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

16  granted, or that seek monetary relief from a defendant who is immune from such relief.

17  28 U.S.C. § 1915A(b)(1),(2).

18    A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

19  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28

20  (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an

21  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

22  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

23  pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

24  Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir.

25  2000) ("a judge may dismiss [in forma pauperis] claims which are based on indisputably

26  meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at

2

1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic Corp., 550 U.S. at 555) (citations and internal quotations marks omitted). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, id., and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Pursuant to the initial screening of a complaint under 28 U.S.C. § 1915A, a court may dismiss an action for failure to exhaust administrative remedies. See Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002) (affirming district court's sua sponte dismissal of prisoner's complaint because he failed to exhaust his administrative remedies). Thereafter, failure to exhaust is an affirmative defense that must be raised and proved by the defendant. Wyatt v. Terhune, 315 F.3d 1108, 1112 (9th Cir. 2003).

B. Plaintiff's Allegations

The operative complaint herein (plaintiff's First Amended Complaint, filed June 27, 2012 (Dkt. No. 5)), challenges several aspects of plaintiff's incarceration at CSP-SAC, alleging discrimination on the basis of disability and, pursuant to different circumstances, on the basis of race; alleged denial of plaintiff's right to file prison grievances and to access the courts; and alleged cruel and unusual punishment. The complaint names as defendants the California

1  Department of Corrections and Rehabilitation ("CDCR"); CDCR Director of Adult Institutions

2  S. Hubbard; CSP-SAC Warden T. Virga; Correctional Sergeant C. Haring; Correctional

3  Lieutenant A. Konrad; Correction Captains S. Shannon, D. Deroco and J. Clough; and Appeals

4  Coordinators K.A. Daly, C. Burnett and B. Donahue.

5  Plaintiff's incarceration at CSP-SAC commenced on April 22, 2011.  (Cmplt. ¶

6  2.)  The complaint alleges that plaintiff was initially housed in CSP-SAC's Facility C, Building

7  5, as the sole occupant in Cell No. 104, because his cellmate had been moved to administrative

8  segregation ("ad seg").  Plaintiff states that this placement met his medical needs, including the

9  requirement of a lower bunk due to his knee disability, and separation from other inmates due to

10  his mental disability.  However, on September 22, 2011, Correctional Officer ("CO") Williams

11  (not a defendant) moved plaintiff to Building 7, Cell No. 102.  The beds in plaintiff's new cell

12  were "side-by-side," rather than in bunk formation (plaintiff also refers to the side-by-side

13  arrangement as a "modified cell"), which plaintiff states "would become a significant hardship to

14  him because of his Schizophrenia/Paranoia disorder."  (Id. ¶ 24.)

15  The complaint alleges that plaintiff attempted to submit a grievance on September

16  25, 2011, pursuant to a CDCR Form 1824, challenging his housing placement in Building 7's

17  "modified' side by side cells," asserting that his prior placement in Building 5 had adequately

18  met his need for physical accommodations, i.e. a low bunk in a lower tier cell.  (Id. ¶¶ 8-10; Exh.

19  A.)  The complaint alleges that, on September 28, 2011, plaintiff  "made a good faith effort to

20  obtain administrative aid from facility's Sergeant, C. Harings,"[1] who informed plaintiff that, due

21  to his physical disability, the administration was authorized to move plaintiff.  Plaintiff states

22  that, "[w]ithout disputing Haring's contentions," he nevertheless sought a return to his prior

23  housing.  Haring reportedly became "extremely boisterous, irate and argumentative. . . ."  (Id. ¶

24  27.)  In response, plaintiff requested that Haring move plaintiff to ad seg "because he could not

25

26  [1]  Plaintiff's occasional references to defendant Haring as "Harings" have been retained in quoted statements.

1   live under these dire dire (sic) conditions." (Id. ¶ 28.) Thereafter, Lieutenant Konrad, who

2   apparently heard the conversation, confirmed with plaintiff that he had requested placement in ad

3   seg, then directed Haring to place plaintiff into "the cage." (Id. ¶ 30.)

4          The complaint alleges that once plaintiff was secured in the cage, "Haring

5   admonished plaintiff that his attempt to escape being placed into the facility's modified cell, by

6   going to ad seg, would fail. Because once plaintiff return[ed], Haring would make sure that he

7   would be placed RIGHT-BACK-INTO the modified cell. Then after Harings retreated from the

8   cage, plaintiff admonished Harings that his disability inhibits him from standing for a long period

9   of time, but was ignored." (Id. ¶ 31 (original emphasis).)

10         Allegedly, seven hours later, "plaintiff was still secured inside this

11   small/cramp[ed] cage," and began to experience significant pain in his right knee. (Id. ¶ 32.) A

12   nurse responded to plaintiff's complaints, observed "a considerable amount of swell[ing]" to

13   plaintiff's knee, and secured a move of plaintiff to a larger cage. (Id. ¶ 33.) Plaintiff was

14   thereafter placed in ad seg until approximately October 1, 2011. Two weeks after his release

15   from ad seg, plaintiff was treated by a physician who prescribed ibuprofen to relieve plaintiff's

16   knee pain.

17         Meanwhile, on September 29, 2011, while plaintiff was still in ad seg, he was

18   allegedly approached by Facility C Captain Shannon, who informed plaintiff that he was being

19   released back to Facility C; Shannon allegedly sent an escort to move plaintiff to Building 7, Cell

20   No. 101, a "side-by-side" cell, which was allegedly shared with a known homosexual who was

21   "possibly 'HIV' positive." (Id. ¶ 36.) Plaintiff declined the move, and was issued another lock-

22   up order and retained in ad seg. Plaintiff alleges that, thereafter, he was "truly affected by

23   Harings' arbitrary and capricious actions and began to feel 'suicidal.'" (Id. ¶ 37.) Plaintiff states

24   that he was placed on suicide watch, and refused to eat or drink for three days. (Id.)

25         The complaint alleges that a "CSP-SAC Mental Health Physician had intervened

26   and made a recommendation to the prison administration officials to exclude plaintiff from the

1     facility's modified cell.  The physician['] request came with specific warnings about the effect

2     such cell could have on plaintiff but such request was ignored."  (Id. ¶ 38.)  (Plaintiff references

3     this recommendation as "Exhibit H," but the report is not included; the exhibits attached to the

4     complaint stop at "Exhibit G.")

5             On October 1, 2011, plaintiff was allegedly placed in Building 8, Cell No. 114,

6     another "side-by-side" cell, with an inmate who was reportedly HIV positive.  Plaintiff alleges

7     that "[d]efendant Harings had clear knowledge of [the cellmate's] HIV positive status, and knew

8     about plaintiff's schizophrenia/paranoia disorder.  Haring['] intention[] was to incite a physical

9     altercation between plaintiff and [the cellmate].  Hoping that plaintiff's mental status would be

10    highly provoke (sic).  This sinistered (sic) scheme effectuated by Harings was 'arbitrary and

11    capricious,' and motivated retaliatorily.  The 'cruel and unusual' punishment plaintiff had to

12    sustain herein was unjust."  (Id. ¶ 40.)  Plaintiff states that he refused the housing, asserting

13    "safety concerns," and was again placed in ad seg.  (Id. ¶ 39.)

14            On October 6, 2011, CSP-SAC Appeals Coordinator ("AC") Burnett returned

15    plaintiff's Form 1824 complaint, which plaintiff had submitted on September 25, 2011,

16    requesting that he be moved to a cell with a regular lower bunk.  In a form cover letter, AC

17    Burnett explained that plaintiff's complaint could not be processed pursuant to a CDCR Form

18    1824 because "the issue raised is not subject to the Armstrong Remedial Plan (ARP)," and

19    because plaintiff's complaint improperly addressed "multiple issues;" plaintiff was advised that

20    he could pursue his complaints in separate CDCR Form 602's, "to appeal the non-ARP issues."

21    (Cmplt., Exh. A.)

22            Plaintiff contends that this official response rendered his "ARP issues non-

23    grievable," absolving plaintiff of the requirement that he further exhaust his challenge to being

24    housed in a side-by-side cell based on his alleged disabilities.  (Id. ¶ 10.)  Plaintiff alleges that

25    his physical disability entitles him to benefit from "the services of the department['] regular

26    designed bunk bed cells.  Even after CSP-SAC Administration Officials were made aware about

1   the potential risk such modified cell could have on plaintiff." (Id. ¶ 44, citing Exh. H.)

2          Thereafter, on October 10, 2011, plaintiff sent a letter to CSP-SAC Warden Virga,

3   attaching a CDCR Form 602, which challenged plaintiff's placement and the alleged conduct of

4   Haring. (Id. ¶¶ 11, 41.) The Form 602, dated October 10, 2011, alleges that Sergeant Haring

5   was acting beyond his authority in "permanently" placing plaintiff in a side-by-side cell, and with

6   inmates who were gay and/or HIV-positive, which plaintiff asserted demonstrated Haring's

7   intention to exacerbate impact plaintiff's "diagnosed mental illness of Paranoia/Schizophrenia;"

8   plaintiff alleged that it was Haring's intent "to exasperate my mental condition," causing plaintiff

9   to "suffer[] a psychoactive breakdown," and be "placed on suicide watch." (Id., Exh. B.)

10         The complaint alleges that plaintiff's October 10, 2011 letter was forwarded to

11   CSP-SAC AC Burnett who, on November 2, 2011, rejected the appeal because "not submitted . .

12   . on the departmentally approved appeal forms," noting that plaintiff needed to detach

13   handwritten pages beyond the additional page authorized by a Form 602-A. (Id. ¶¶ 11,12; Exh.

14   B.) Nevertheless, it appears that authorities later decided to review plaintiff's October 10, 2011

15   submission. (See Dkt. No. 5 at 36 ("Staff Use Only" notations).) On January 26, 2012, after

16   plaintiff was interviewed by Sergeant Rose (not a defendant), plaintiff's 602 was "partially

17   granted" at the First Level Review (Log No. SAC-C-12-00016). The appeal decision provided in

18   pertinent part (Cmplt., Exh. B, Dkt. No. 5 at 35):

19
20               Sgt. Haring . . . stated that your medical needs required housing on
the lower tier in a lower bunk. The cell you were put in fulfills
your medical requirements for housing. According to your medical

21               needs you are correctly housed, you are in a lower tier assigned to a
lower bunk.

22               Officers are to be professional in their dealings with inmates and
do not retaliate against them for filing appeals.

23
24               Your request to have your allegations investigated is granted.
You[r] request to have no retaliation against you is granted. Your

25               appeal does not meet the requirements for a staff appeal so it is
denied.

26   ////

1   Plaintiff now asserts that, "because plaintiff's request[s] were granted, his

2   remedies were exhausted."  (Cmplt. ¶ 13.)

3   The complaint next alleges that plaintiff filed a Form 602 on March 12, 2012 (Log

4   No. SAC-12-00751), alleging that mailroom personnel failed to process plaintiff's legal

5   documents, in violation of plaintiff's First Amendment rights.  Plaintiff alleges that the subject

6   documents never reached the court, resulting in the dismissal of plaintiff's then-pending case.

7   (Id. ¶ 14; Exh. C.)  (The Form 602 identifies, as an attachment thereto, "The Court's Report and

8   Recommendation of United States Magistrate Judge" (Dkt. No. 5 at 40); however, plaintiff does

9   not identify the dismissed case, and its identity was not apparent pursuant to a search of

10  plaintiff's other cases filed in this court.)  The Form 602 was returned to plaintiff on March 28,

11  2012, by AC Daly, informing plaintiff that the appeal lacked sufficient specificity.  (Cmplt. ¶ 15;

12  Exh. D, Dkt. No. 5 at 43.)  On April 24, 2012, plaintiff responded by letter, wherein he

13  demanded that his grievance be processed as submitted.  (Cmplt. ¶ 16; Exh. D, Dkt. No. 5 at 44-

14  5.)  Plaintiff's materials were again returned to him, this time by AC Donahue, on April 27,

15  2012, instructing plaintiff in pertinent part as follows (Cmplt. ¶ 17; Exh. E, Dkt. No. 5 at 47):

16      Submit new CDCR 22 form directly to Mailroom Supervisor for
        response.  The new CDCR-602 cannot be utilized until the CDCR
17      22 form has been exhausted in its entirety.  Do not return to the
        Appeals Unit until completed or appeal may be cancelled for
18      failure to follow instructions per CCR [California Code of
        Regulations] [§] 3084.6(c)(3).
19

20  The complaint contains no allegations or exhibits indicating that plaintiff further pursued this

21  grievance.

22  The complaint next challenges an ongoing lockdown and resulting "Modified

23  Program" at CSP-SAC, that apparently began with an inmate disturbance on December 7, 2011.

24  According to the complaint, plaintiff's motion for preliminary injunction, and supporting

25  documents, the December 2011 incident was a "riot on the C Facility main yard . . . involving

26  Black inmates as well as inmates identified as or associated with Southern Hispanic[s] (SH) and

8

1    Mexican Nationals (MN)."  (Dkt. No. 6 at 10.)  There was a second incident on April 16, 2012,

2    involving inmates housed in Building 5, which apparently resulted in the continuation of the

3    lockdown.  As a result, "all Level IV Southern Hispanic and Mexican National inmates housed in

4    Blocks 1-4, as well as all Black inmates housed in Blocks 1-8 will remain on Modified Program

5    until further notice."  (Id. (CSP-SAC Memorandum dated July 2, 2012).)  The complaint alleges

6    that, in CSP-SAC's Facility C, Southern Hispanic inmates are housed only in Buildings 1

7    through 4, while Northern Hispanic inmates are housed only in Buildings 5 through 8.  African-

8    American inmates are apparently housed in each of these buildings.  Inmates subject to the

9    Modified Program are denied, inter alia, telephone access and visitations, and have limited yard

10   access.  (Dkt. No. 6 at 11.)

11           Plaintiff, an African-American, is currently housed in Building 8.  (Cmplt. ¶¶ 47,

12   48; see also Dkt. No. 6 at 11.)  Plaintiff alleges that he has no affiliation with any gang, and was

13   not involved in the December 2011 riot but "secured inside his cell" at the time.  (Id. ¶ 47.)

14   Plaintiff alleges that the Modified Program discriminates against him and all other African-

15   American inmates who were not involved in the incident, based solely on their race.  Plaintiff

16   contends that the Program has caused him "substantial deprivation . . . includ[ing] being confined

17   to his cell (24) hours a day (even for meals), no exercise time on the yard, only three showers per

18   week handcuff[ed] (in mechanical restraints), no packages, canteen, no visits, no telephone calls,

19   and compelled to utilize the facility's inadequate paging system."  (Id. ¶ 53.)  In addition,

20   plaintiff alleges that he is denied all outside visitation.  (Id. ¶ 54.)  Plaintiff alleges that even

21   inmates placed in ad seg due to their participation in the December 2011 and April 2012

22   incidents now receive greater privileges than inmates who were not involved in those incidents

23   but nevertheless remain on the modified program.  (Id. ¶ 55.)  The complaint alleges that all

24   Facility C inmates who are White, Asian, Indian and Northern Hispanic have been permitted to

25   resume normal programming.  (Id. ¶ 46.)

26   ////

1    The complaint alleges that plaintiff filed a grievance on May 1, 2012 (Log No.

2  SAC-12-01326), challenging CSP-SAC's Modified Program, but that it was improperly rejected.

3  (Id. ¶ 18; Exh. F.)  The grievance challenged the Modified Program on Eighth and Fourteenth

4  Amendment grounds, as racially discriminatory.  (Id., Dkt. No. 5 at 51.)  Plaintiff's grievance and

5  materials were returned to him by AC Donahue, on May 8, 2012, instructing plaintiff that he

6  could not submit a CDCR Form 602 until he had submitted and exhausted a CDCR Form 22

7  with the Program Sergeant, again referencing CCR § 3084.6(c)(3).  (Cmplt. ¶ 18; Exh. F, Dkt.

8  No. 5 at 49.)  It does not appear that plaintiff further pursued this matter.

9    Plaintiff now contends that other inmates have been permitted to file grievances

10  pursuant to a CDCR Form 602, without first exhausting a CDCR Form 22, and has attached to

11  the complaint a copy of a First Level appeal response to another inmate's Form 602 challenge to

12  the Modified Program.  (Cmplt. ¶ 19; Exh. F; Dkt. No. 5 at 52-5.)  Plaintiff has also attached a

13  blank copy of the CDCR Form 22.  (See id., Exh. G, Dkt. No. 5 at 57.)  Plaintiff contends that

14  the Appeals Coordinators misinformed plaintiff that exhausting a Form 22 "request" was a

15  prerequisite to submitting a Form 602 "grievance," and thus rendered administrative exhaustion

16  "unavailable" to plaintiff.  (Cmplt. ¶¶ 20-21.)  The complaint alleges that plaintiff was denied

17  his First Amendment right to submit prisoner grievances and to access the courts, due to the

18  alleged abuse of authority exercised by the CSP-SAC Appeals Coordinators by repeatedly

19  rejecting plaintiff's grievances.  (Cmplt. ¶ 56.)

20    The complaint seeks general declaratory relief, "that the defendants have acted in

21  violation of the United States Constitution;" injunctive relief "compelling CSP-SAC

22  Administrative Officials to desist 'immediately' their race base[d] lockdown policy, practice or

23  custom," and "also cease all discriminative actions against plaintiff based on his physical and

24  mental disorder;" compensatory and punitive damages.  (Dkt. No. 5 at 26.)

25  ////

26  ////

C. <u>Discussion</u>

      1. <u>Side-by-Side Cell Assignment</u>

      On September 25, 2011, plaintiff attempted to obtain a cell transfer pursuant to a completed CDCR Form 1824, the designated form for prisoner challenges under the Americans with Disabilities Act ("ADA").  <u>See</u> 15 Cal. Code Regs. § 3085; <u>see</u> <u>also</u> <u>Armstrong v. Davis</u>, 58 Fed. Appx. 695 (9th Cir. 2003) (permanent injunction); <u>Armstrong v. Schwarzenegger</u>, Case No. 4:94-cv-02307 (N.D. Cal., May 30, 2006) (order granting motion to enforce revised permanent injunction); and related cases.  Pursuant to this request, plaintiff referenced only his knee disability; he referenced neither his mental disability nor his interactions with defendant Haring, which apparently began three days later.  Plaintiff's complaint was designated as a challenge to his "living conditions, housing assignment," and returned to him by AC Burnett with "boiler" language that the "the issue raised is not subject to the Armstrong Remedial Plan," and could be resubmitted pursuant to a Form 602.  (Dkt. No. 5 at 31.)

      This court cannot, at this time, ascertain whether plaintiff's complaint indeed fell outside the scope of the Armstrong Remedial Plan.  However, thereafter, on October 10, 2011, plaintiff sent a letter to CSP-SAC Warden Virga, together with a completed Form 602, pursuant to which plaintiff explained in detail that his mental disability was adversely impacted by assignment to a side-by-side cell, and that Sgt. Haring was retaliating against plaintiff.  (<u>Id.</u> at 36-37.)  Although, on November 2, 2011, AC Burnett returned the Form 602 to plaintiff, apparently because it contained unauthorized handwritten pages, the complaint obtained a First Level Review decision on January 26, 2012.  That decision "partially granted" plaintiff's appeal, expressly denying plaintiff's requested cell move, on the ground that plaintiff was "correctly housed" based on his "medical needs," as verified by Sgt. Haring; the decision "granted" plaintiff's requests that his allegations be investigated, and that he not be retaliated against for submitting the grievance.  (<u>Id.</u> at 35.)  The First Level decision did not address plaintiff's allegations of misconduct against defendant Haring.

1    Plaintiff concedes that he did not pursue this grievance through the Second and

2    Third Level Reviews.  Rather, plaintiff asserts that the court should deem this grievance

3    exhausted "because plaintiff's request[s] were granted."  (Cmplt. ¶ 13.)  This statement is clearly

4    inaccurate because plaintiff continues to challenge his placement in a side-by-side cell, and the

5    alleged misconduct of defendant Haring.

6    It is well established that the Prison Litigation Reform Act ("PLRA") requires that

7    a prisoner exhaust his available administrative remedies before bringing a federal civil rights

8    action.  See 42 U.S.C. § 1997e(a); Brown v. Valoff, 422 F.3d 926, 934 (9th Cir. 2005); Griffin v.

9    Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009).  "[T]he PLRA's exhaustion requirement applies to

10   all inmate suits about prison life, whether they involve general circumstances or particular

11   episodes, and whether they allege excessive force or some other wrong."  Bennett v. King, supra,

12   293 F.3d at 1098 (citation and internal quotation marks omitted); see also McKinney v. Carey,

13   311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam); Jones v. Bock, 549 U.S. 199, 211 (2007)

14   ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims

15   cannot be brought in court.").  Even if a prisoner seeks relief that is unavailable through the

16   prison's grievance system (e.g. monetary relief), he must still first exhaust all available

17   administrative remedies.  Booth v. Churner, 532 U.S. 731, 741 (2001).

18   The court finds that plaintiff failed to exhaust his Eighth Amendment claims

19   against defendant Haring, and his ADA-related claims premised on plaintiff's requested cell

20   move, requiring dismissal of both claims.  Nevertheless, the court notes the potential seriousness

21   of both claims, particularly in light of the alleged putative recommendation from a Mental Health

22   Physician, and suggests that CDCR and the Attorney General's Office seek to resolve plaintiff's

23   relatively straight-forward housing request.  If the challenged circumstances persist, plaintiff

24   must administratively exhaust his claims before again bringing them before this court in a civil

25   rights action.

26   ////

1        2. <u>Mailroom</u>

2        Plaintiff alleges a violation of his First Amendment rights to access the courts,

3   based on his allegation that the CSP-SAC mailroom failed to process plaintiff's legal materials,

4   resulting in the dismissal of one of plaintiff's federal actions.  Plaintiff administratively pursued

5   this claim by submitting a Form 602 on March 12, 2012 (Log No. SAC-12-00751).  The

6   grievance was returned to plaintiff on March 28, 2012, by AC Daly, on the ground that the appeal

7   lacked specificity.  (Dkt. No. 5 at 43.)  Plaintiff thereafter demanded that the Appeals

8   Coordinator process his grievance, but it was again returned to plaintiff on April 27, 2012, by AC

9   Donahue, on the ground that "[t]he new CDCR-602 cannot be utilized until the CDCR 22 form

10  has been exhausted in its entirety," citing California Code of Regulations, tit.15, §3084.6 (c)(3).[2]

11  (<u>Id.</u> at 47.)

12       Plaintiff alleges a further First Amendment claim, premised on the refusal of the

13  CSP-SAC Appeals Coordinators to process plaintiff's Form 602 without requiring plaintiff to

14  first exhaust his claim pursuant to a Form 22; plaintiff asserts that administrative remedies for

15  exhausting his First Amendment claims were effectively unavailable to him.

16       The PLRA does not require exhaustion when circumstances render administrative

17  remedies "effectively unavailable."  <u>Sapp v. Kimbrell</u>, 623 F.3d 813 (9th Cir. 2010).  However,

18  the relevant facts do not appear to support plaintiff's position.  While the court has found no

19

20       [2]  The cited regulation provides in pertinent part:

21   (c)   An appeal may be cancelled for any of the following reasons, which
          include, but are not limited to:
22

23        . . . (3) The inmate or parolee continues to submit a rejected appeal while
          disregarding appeal staff's previous instructions to correct the appeal
24        including failure to submit necessary supporting documents, unless the
          inmate or parolee provides in Part B of the CDCR Form 602 (Rev. 08/09),
25        Inmate/Parolee Appeal, a reasonable explanation of why the correction
          was not made or documents are not available.

26  15 Cal. Code. Regs. § 3084.6(c)(3).

1   explicit authority to support the rejection of an inmate's grievance filed pursuant to CDCR Form

2   602, for failure to first submit and exhaust a CDCR Form 22, pertinent regulations appear to

3   support this requirement at the discretion of the reviewing official.  However, the undersigned

4   has found no case law on point, and neither form references the other:  Form 22 does not state

5   that it is a prerequisite for filing a Form 602, and Form 602 does not reference a Form 22, even in

6   its list of documents that may be filed in support of the 602.

7         The Form 22 process appears to have been implemented in January 2011.  See 15

8   Cal. Code. Regs. § 3086 n.1 (citing Cal. Register 2010, No. 51, creating new section 3086, filed

9   12-13-2010, operative 1-28-2011).  A Form 22 is described as follows in the CDCR regulations.

10  The regulations provide that, "Inmates and parolees may request interviews with staff and/or

11  request items and services via a written request process," pursuant to a "CDCR Form 22 (10/09),

12  Inmate/Parolee Request for Interview, Item or Service."  15 Cal. Code Regs. § 3086 (a), (c).

13  These forms are to "be made readily available" throughout the prison.  Id., § 3086(c).  A Form 22

14  is intended to facilitate the "timely resolution of routine matters through an effective and

15  non-conflictive communication process," pursuant to which, "Department staff shall attempt to

16  resolve inmate and parolee issues expeditiously."  Id., § 3086(a).  The regulations require an

17  initial response to a submitted Form 22, within three working days.  Id., § 3086(f)(4).  A prisoner

18  may thereafter resubmit the Form 22 to the reporting employee's supervisor, who must provide a

19  response within seven calendar days.  Id., § 3086(h).

20         While an inmate's submission of a Form 22 does not stay the thirty-day deadline

21  for initiating a Form 602 appeal (or any subsequent appeal deadlines), and the two forms may

22  even be filed at the same time, exhaustion of the Form 22 process may nevertheless be deemed a

23  prerequisite to pursuing a Form 602 appeal.  Id., § 3086(e)(2).[3]  Such additional requirement

24

25         [3]   The cited regulation provides in pertinent part:

26         As the written request process does not stay the time constraints for filing an
           appeal [see 15 Cal. Code Regs. § 3084.8], the inmate or parolee is not precluded

1   appears to trigger a thirty-day extension of time for initially submitting the appeal.  Id., §

2   3084.4(c).  However, "[a]n inmate's . . . documented use of a Request for Interview, Item or

3   Service form does not constitute exhaustion of administrative remedies as defined in subsection

4   3084.1(b) [pursuant to a Form 602]."  Id. § 3086(i).

5          Although CDCR's new Form 22 appears to accord substantial discretion to prison

6   officials to decide whether to require a prisoner to complete the Form 22 process before

7   accepting a related Form 602 appeal, such discretion appears to be authorized by the

8   Department's regulations.  It is reasonable to require that a prisoner seeking to challenge this

9   discretion demonstrate compliance, or at least a good faith attempt to comply, with the

10  authorized exhaustion requirements before bringing the challenge to federal court on the ground

11  that administrative remedies were "effectively unavailable."  In the instant case, plaintiff has

12  failed to demonstrate even substantial compliance.  Review of plaintiff's submitted 602 Form,

13  returned to him for lack of specificity, supports the administrative action.  On April 17, 2012, this

14  court received notification from the CSP-SAC Warden that legal documents in several cases had

15  not been timely processed by its mailroom, and such documents were thereupon filed with the

16  court in each affected case.[4]  Plaintiff has identified no such documents in any of his own cases,

17  and the court has not located any.  Moreover, plaintiff refused to provide additional information

18  in support of his 602 Appeal, as requested by AC Daly, instead insisting that the appeal be

19  processed as initially submitted.  Thereafter, when plaintiff was instructed by AC Donahue to

20  first exhaust the Form 22 process, plaintiff apparently pursued the matter no further.

21  ////

22  ─────────────

23      from filing an appeal on the same issue prior to receiving a response to their
        written request.  However, the appeal may be rejected by the appeals coordinator
        or designee with instructions to complete the request form process before
24      resubmitting the appeal.

25  15 Cal. Code. Regs. § 3086(e)(2).

26      [4]  See e.g. Case No. 2:09-cv-02590 KJN (Dkt. No. 33).

                                        15

1    The failure of plaintiff to administratively exhaust his mailroom challenge

2 requires dismissal of his First Amendment claim premised thereon, as well as plaintiff's further

3 First Amendment challenge to the processing of his related 602 Appeal.

4    3. "Modified Program"

5    For the reasons previously stated with respect to plaintiff's mailroom challenge,

6 plaintiff failed to exhaust his administrative remedies on this claim, or to make a good faith effort

7 to comply with the additional exhaustion requirements imposed on him.  Plaintiff's Form 602

8 Appeal was returned within a week of its submission, with instructions from AC Donahue that

9 plaintiff exhaust the Form 22 process.  Plaintiff has made no allegations, nor submitted any

10 evidence, to indicate that plaintiff further pursued the matter.  For this reason, plaintiff's Eighth

11 and Fourteenth Amendment claims premised on CSP-SAC's "Modified Program" should be

12 dismissed.

13    4. No Remaining Claims

14    The dismissal of each of plaintiff's claims, as set forth above, renders his

15 complaint devoid of any potentially cognizable claims.  While, generally, the exhaustion

16 requirement is an affirmative defense that may be raised by a defendant in a non-enumerated

17 Rule 12(b) motion, see Jones v. Bock, 549 U.S. 199, 216 (2007), Wyatt v. Terhune, 315 F.3d

18 1108, 1117-19 (9th Cir. 2003), "[a] prisoner's concession to nonexhaustion is a valid ground for

19 dismissal, so long as no exception to exhaustion applies," Wyatt, 315 F. 3d at 1120.

20    The undersigned finds that plaintiff's concessions to nonexhaustion, which is also

21 demonstrated by the record, warrants dismissal of the complaint in its entirety, without leave to

22 amend, but without prejudice.  Plaintiff may pursue any of these claims anew, after exhausting

23 his administrative grievances, pursuant to a new complaint, which will be assigned a new case

24 number, and any related application to proceed in forma pauperis.

25    III. Motion for Preliminary Injunction

26    Plaintiff seeks an immediate order of this court "ordering CSP-SAC Warden

16

1    Virga to 'immediately' (desist) this racially based lockdown because it serves 'no' penological

2    purpose." (Dkt. No. 6 at 1.)

3             Because this motion has not been served on defendants, it effectively seeks a

4    temporary restraining order.[5]  While it is the practice in this district to apply the same standards

5    to motions for temporary restraining orders and motions for preliminary injunction, see, e.g.,

6    Aiello v. OneWest Bank, 2010 WL 406092, *1 (E.D. Cal. 2010), a temporary restraining order

7    will be granted only in the most extraordinary of circumstances.  "Except in the most

8    extraordinary of circumstances, no temporary restraining order shall be granted in the absence of

9    actual notice to the affected party and/or counsel, by telephone or other means, or a sufficient

10   showing of efforts made to provide notice.  See Fed. R. Civ. P. 65(b)."  Local Rule 231(a).

11            "The proper legal standard for preliminary injunctive relief requires a party to

12   demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm

13   in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

14   injunction is in the public interest.'"  Stormans, Inc. v. Selecky, 571 F.3d 960, 978 (9th Cir.

15   2009), quoting Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 375-76 (2008).

16   In cases brought by prisoners involving conditions of confinement, any preliminary injunction

17   "must be narrowly drawn, extend no further than necessary to correct the harm the court finds

18   requires preliminary relief, and be the least intrusive means necessary to correct the harm."  18

19   U.S.C. § 3626(a)(2).  Moreover, where, as here, "a plaintiff seeks a mandatory preliminary

20   injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely

21   cautious' about issuing a preliminary injunction and should not grant such relief unless the facts

22   and law clearly favor the plaintiff."  Committee of Central American Refugees v. I.N.S., 795

23

24       [5]  A temporary restraining order is an extraordinary and temporary "fix" that the court
     may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant
25   "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant
     before the adverse party can be heard in opposition."  See Fed. R. Civ. P. 65(b)(1)(A).  The
     purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing.
26   See generally, Fed. R. Civ. P. 65; see also, E.D. Cal. L. R. ("Local Rule") 231(a).

1    F.2d 1434, 1441 (9th Cir. 1986), quoting <u>Martin v. International Olympic Committee</u>, 740 F.2d

2    670, 675 (9th Cir. 1984).

3              Plaintiff contends that the present circumstances meet the criteria for issuing a

4    mandatory preliminary injunction, specifically:  that there is a reasonable likelihood that plaintiff

5    will prevail on the merits of his pertinent claims as set forth in his complaint; that the continued

6    application of CSP-SAC's modified program to all African-American inmates in Facility C

7    presents substantial threats of irreparable harm as demonstrated by plaintiff being "denied his

8    Fourteenth [Amendment] equal protection rights not to be discriminated [against] based on his

9    race," and being denied "his rights to access to the telephone," and "to at least ten (10) hours of

10   outdoor recreation," and "court access as well" (Dkt. No. 6 at 7); and that there is an "alternate

11   and less intrusive method to utilize as [CSP-SAC] did back in September 2010, when the

12   administration ONLY lock[ed] down its Crips and Bloods and Northern Hispanic inmates

13   housed on Fac. C Bld. 5-8, resuming program for 'all' other inmates housed in Bld. 1-8" (<u>id.</u>,

14   Exh. B).

15             Plaintiff's motion for preliminary injunctive relief must fail because plaintiff is

16   precluded from challenging the Modified Program in his complaint, for failure to exhaust his

17   administrative remedies.  There is presently no reasonable likelihood that plaintiff will prevail in

18   this action on the substance of his challenge to the Modified Program.  The instant complaint is

19   not the appropriate vehicle for seeking preliminary injunctive relief under the Modified Program.

20             Moreover, the court notes that, even if plaintiff's motion was properly before this

21   court, it would not be likely to support preliminary injunctive relief.  As the Supreme Court has

22   noted, "the problems that arise in the day-to-day operation of a corrections facility are not

23   susceptible of easy solutions.  Prison administrators therefore should be accorded wide-ranging

24   deference in the adoption and execution of policies and practices that in their judgment are

25   needed to preserve internal order and discipline and to maintain institutional security."  <u>Bell v.</u>

26   <u>Wolfish</u>, 441 U.S. 520, 547 (1979) (citations omitted).

1    Accordingly, this court recommends that plaintiff's motion for preliminary

2 injunctive relief be denied.

3 IV.  Conclusion

4    For the foregoing reasons, IT IS HEREBY ORDERED that:

5    1.  Plaintiff's request for leave to proceed in forma pauperis (Dkt. No. 2), is

6 granted.

7    2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.

8 Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. §

9 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the

10 Director of the California Department of Corrections and Rehabilitation filed concurrently

11 herewith.

12    3.  The Clerk of Court is directed to randomly assign a district judge to this action.

13    Further, IT IS HEREBY RECOMMENDED that:

14    1.  Plaintiff's motion for preliminary injunctive relief (Dkt. No. 6) be denied;

15    2.  Plaintiff's First Amended Complaint (Dkt. No. 5), be dismissed without leave

16 to amend; and

17    3.  This action be dismissed without prejudice.

18    These findings and recommendations are submitted to the United States District

19 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 21 days

20 after being served with these findings and recommendations, any party may file written

21 objections with the court and serve a copy on all parties.  Such a document should be captioned

22 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

23 objections shall be filed and served within 14 days after service of the objections.  The parties are

24 ////

25 ////

26 ////

1   advised that failure to file objections within the specified time may waive the right to appeal the

2   District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   DATED:  July 24, 2012

4

5                                               _____

6                                               KENDALL J. NEWMAN
                                                UNITED STATES MAGISTRATE JUDGE
7   cole0985.scrn.pi

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26